Citation Nr: 1749168 
Decision Date: 10/31/17 Archive Date: 11/06/17

DOCKET NO. 12-32 837 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Atlanta, Georgia


THE ISSUES

1. Entitlement to an initial rating in excess of 10 percent for a right knee disability.

2. Entitlement to an initial rating in excess of 10 percent for a left knee disability.


WITNESSES AT HEARING ON APPEAL

Appellant and Spouse


ATTORNEY FOR THE BOARD

H. Ahmad, Associate Counsel

INTRODUCTION

The Veteran served on active duty from March 1981 to May 2004.

This matter is before the Board of Veterans' Appeals (Board) on appeal from a September 2011 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Atlanta, Georgia. The Veteran testified before the undersigned at an April 2016 videoconference hearing. A transcript of that hearing is of record.

The Board remanded the claim in December 2016. In light of the medical examination conducted, and the further adjudicatory actions taken by the RO, the Board finds that there has been substantial compliance with the remand requests. Stegall v. West, 11 Vet. App. 268 (1998); D'Aries v. Peake, 22 Vet. App. 97 (2008); Dyment v. West, 13 Vet. App. 141 (1999). 


FINDINGS OF FACT

1. Throughout the appeal period, the Veteran's right knee disability was manifested by painful motion and objective evidence of arthritis with forward flexion limited to 135 degrees at worst.

2. Throughout the appeal period, the Veteran's right knee disability was manifested by painful motion and objective evidence of arthritis with forward flexion limited to 100 degrees at worst.


CONCLUSIONS OF LAW

1. The criteria for an initial rating in excess of 10 percent for a right knee disability have not been met. 38 U.S.C.A. § 1155, 5103, 5107 (West 2014); 38 C.F.R. §§ 3.159, 3.21, 4.3, 4.7, 4.10, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5257, 5258, 5259, 5260, 5261, 5263 (2014).

2. The criteria for an initial rating in excess of 10 percent for a left knee disability have not been met. 38 U.S.C.A. § 1155, 5103, 5107 (West 2014); 38 C.F.R. §§ 3.159, 3.21, 4.3, 4.7, 4.10, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5257, 5258, 5259, 5260, 5261, 5263 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

The Board has thoroughly reviewed all of the evidence in the claims file. While the Board must provide reasons and bases supporting a decision, there is no need to discuss, in detail, the evidence submitted by the Veteran or on behalf of the Veteran. Gonzales v. West, 218 F.3d 1378 (Fed. Cir. 2000) (Board must review the entire record, but does not have to discuss each piece of evidence). The analysis below focuses on the most salient and relevant evidence of record. The Veteran should not assume that the Board has overlooked pieces of evidence that are not explicitly discussed. Timberlake v. Gober, 14 Vet. App. 122 (2000).

The Board must assess the credibility and weight of all evidence, including the medical evidence, to determine its probative value, accounting for evidence that it finds to be persuasive or unpersuasive, and providing reasons for rejecting any evidence favorable to the Veteran. Equal weight is not given to each piece of evidence contained in the record. Every item of evidence does not have the same probative value. When the evidence is assembled, the Board is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a preponderance of the evidence is against a claim, in which case the claim is denied. Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

Duties to Notify and Assist

VA has a duty to notify a Veteran of the information and evidence necessary to substantiate a claim for VA benefits. 38 U.S.C.A. §§ 5103, 5103A (West 2014); 38 C.F.R. § 3.159 (2016). VA also has a duty to assist Veterans in the development of claims. 38 U.S.C.A. §§ 5103, 5103A (West 2014). Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and representative, if any, of any information, and any medical or lay evidence, that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a) (West 2014); 38 C.F.R. § 3.159(b) (2016); Quartuccio v. Principi, 16 Vet. App. 183 (2002). Proper notice from VA must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will to provide; and (3) that the claimant is expected to provide. The notice should be provided prior to an initial unfavorable decision on a claim by the agency of original jurisdiction. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004).

The notice requirements apply to all five elements of a service-connection claim, including: (1) Veteran status; (2) existence of a disability; (3) a connection between service and the disability; (4) degree of disability; and (5) effective date of the disability. The notice should include information that a disability rating and an effective date for the award of benefits will be assigned if service connection is awarded. Dingess v. Nicholson, 19 Vet. App. 473 (2006). The notification requirements were met in correspondence to the Veteran dated in March 2011.

The Board also finds that VA's duty to assist has been satisfied. VA has done everything reasonably possible to assist the Veteran with respect to the claim. 38 U.S.C.A. § 5103A (West 2014); 38 C.F.R. § 3.159(c) (2016). The service medical records have been associated with the claims file. All identified and available treatment records have been secured, which includes VA examinations and VA and private health records. 

VA's duty to assist also includes providing a medical examination or obtaining a medical opinion when necessary to make a decision on the claim. 38 U.S.C.A. § 5103A (West 2014); 38 C.F.R. §§ 3.159(c)(4), 3.326(a) (2016); McLendon v. Nicholson, 20 Vet. App. 79 (2006). When VA provides a claimant an examination or obtains a medical opinion, the examination or opinion must be adequate. Barr v. Nicholson, 21 Vet. App. 303 (2007). An adequate examination must consider the issue at hand and provide sufficient analysis for the Board to weigh that examination against others. Stefl v. Nicholson, 21 Vet. App. 120 (2007). A medical opinion is adequate when it is based on consideration of a Veteran's medical history and examinations, and the final report describes the disability in sufficient detail so that the Board's evaluation of the claimed disability will be a fully informed one. Ardison v. Brown, 6 Vet. App. 405 (1994); Green v. Derwinski, 1 Vet. App. 121 (1991). 

The Veteran was provided with multiple VA examinations, most recently in January 2017. The examiners reviewed the record, considered the Veteran's contentions, and provided an explanation and rationale for all opinions. The Board concludes that the VA examination reports are adequate for the purpose of making a decision. 38 C.F.R. § 4.2 (2016); Barr v. Nicholson, 21 Vet. App. 303 (2007). 

The Board is satisfied that all relevant facts have been adequately developed to the extent possible and that no further assistance is required to comply with the duty to assist. Accordingly, the Board will proceed with a decision.

Increased Rating

Disability ratings are determined by the application of VA's Schedule for Rating Disabilities. 38 C.F.R. Part 4 (2016). The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during service and the residual conditions in civil occupations. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 3.321(a), 4.1 (2016). 

The determination of whether an increased rating is warranted is based on review of the entire evidence of record and the application of all pertinent regulations. Schafrath v. Derwinski, 1 Vet. App. 589 (1991). Where there is a question as to which of two ratings shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 (2016). 

The Board will consider entitlement to staged ratings to compensate for times since filing the claim when the disability may have been more severe than at other times during the course of the claim on appeal. Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007).

The rating of the same disability under various diagnoses is to be avoided. 38 C.F.R. § 4.14 (2016). However, that does not preclude the assignment of separate ratings for separate and distinct symptomatology where none of the symptomatology justifying a rating under one diagnostic code is duplicative of or overlapping with the symptomatology justifying a rating under another diagnostic code. Esteban v. Brown, 6 Vet. App. 259 (1994).

Disability of the musculoskeletal system is primarily the inability, due to damage or infection in parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination, and endurance. It is essential that the examination on which ratings are based adequately portrays the anatomical damage, and the functional loss, with respect to those elements. Functional loss may be due to pain, supported by adequate pathology and evidenced by the visible behavior of the Veteran undertaking the motion. Weakness is as important as limitation of motion, and a part which becomes painful on use must be regarded as seriously disabled. 38 C.F.R. § 4.40 (2016).

The rating of a service-connected disability involving a joint rated on limitation of motion requires adequate consideration of functional loss due to pain and functional loss due to weakness, fatigability, incoordination, or pain on movement of a joint. 38 C.F.R. §§ 4.40, 4.45 (2016); DeLuca v. Brown, 8 Vet. App. 202 (1995).

The intent of the schedule is to recognize painful motion with joint or periarticular pathology as productive of disability. It is the intention to recognize actually painful, unstable, or malaligned joints, due to healed injury, as entitled to at least the minimum compensable rating for the joint. 38 C.F.R. § 4.59 (2016).

Under Diagnostic Code 5003, degenerative arthritis, established by x-ray findings, is to be rated on the basis of limitation of motion under the appropriate diagnostic code for the specific joint or joints affected, which in this case would be Diagnostic Codes 5260 for limitation of flexion of the leg, and Diagnostic Code 5261 for limitation of extension of the leg. When there is arthritis with at least some limitation of motion, but to a degree which would be noncompensable under a limitation-of-motion diagnostic code, a 10 percent rating will be assigned for each affected major joint or group of minor joints. Limitation of motion must be objectively confirmed by findings such as swelling, muscle spasm, or satisfactory evidence of painful motion. In the absence of limitation of motion, a 10 percent rating is warranted if there is x-ray evidence of involvement of two or more major joints or two or more minor joint groups and a 20 percent rating is warranted if there is x-ray evidence of involvement of two or more major joints or two or more minor joint groups and there are occasional incapacitating exacerbations. Ratings under Diagnostic Code 5003 are not to be combined with ratings based on limitation of motion of the same joint. 38 C.F.R. § 4.71a, Diagnostic Code 5003 (2016). 

The Veteran was granted service connection for a right knee disability and a left knee disability, and assigned a 10 percent rating for each based on painful motion under Diagnostic Code 5261. 38 C.F.R. § 4.71a (2016). 

Under Diagnostic Code 5260, a 10 percent rating is assigned for knee flexion limited to 45 degrees. A 20 percent rating is assigned for knee flexion limited to 30 degrees. A maximum 30 percent rating is assigned for knee flexion limited to 15 degrees. 38 C.F.R. § 4.71a, Diagnostic Code 5260 (2016).

Under Diagnostic Code 5261, a 10 percent rating is assigned for knee extension limited to 10 degrees. A 20 percent rating is assigned for knee extension limited to 15 degrees. A 30 percent rating is assigned for knee extension limited to 20 degrees. A 40 percent rating is assigned for knee extension limited to 30 degrees. A maximum 50 percent rating is assigned for knee extension limited to 45 degrees. 38 C.F.R. § 4.71a, Diagnostic Code 5261 (2016).

Normal range of extension of the knee is to 0 degrees and normal range of flexion of the knee is to 140 degrees. 38 C.F.R. Â§ 4.71a, Plate II (2016).

Separate ratings under Diagnostic Code 5260 for limitation of flexion of the leg and Diagnostic Code 5261 for limitation of extension of the leg may be assigned for disability of the same joint, but only where the criteria for a compensable rating are met under each diagnostic code. VAOGCPREC 9-2004 (2004), 69 Fed. Reg. 59,990 (2004).

Diagnostic Code 5257 is used to rate recurrent subluxation or lateral instability of the knee. A 10 percent rating is assigned for slight impairment, a 20 percent rating is assigned for impairment, and a 30 percent rating is assigned for severe impairment. 38 C.F.R. § 4.71a, Diagnostic Code 5257 (2016).

The words slight, moderate, and severe are not defined in the Rating Schedule. Rather than applying a mechanical formula, the Board must evaluate all of the evidence to the end that its decisions are equitable and just. 38 C.F.R. § 4.6 (2016). It also should be noted that use of descriptive terminology such as mild by medical examiners, although an element of evidence to be considered by the Board, is not dispositive of an issue. All evidence must be evaluated in arriving at a decision regarding an increased rating. 38 U.S.C.A. Â§ 7104(a) (West 2014); 38 C.F.R. §§ 4.2, 4.6 (2016).

A claimant who has arthritis or limitation of motion and instability of a knee may be rated separately under Diagnostic Codes 5003 and 5257. However, any separate rating must be based on additional disabling symptomatology. VAOPGCPREC 23-97 (1997), 62 Fed. Reg. 63,604 (1997); VAOPGCPREC 9-98 (1998), 63 Fed. Reg. 56,704 (1998).

Other diagnostic codes relating to the knee are Diagnostic Code 5256 (ankylosis), Diagnostic Codes 5258 and 5259 (symptomatic dislocation and/or removal of semilunar cartilage), Diagnostic Code 5262 (impairment of tibia and fibula) and Diagnostic Code 5263 (genu recurvatum). These conditions are not shown on examination and the Board finds that application of those diagnostic codes is not warranted. 38 C.F.R. § 4.71a (2016).

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall resolve reasonable doubt in favor of the claimant. 38 U.S.C.A. § 5107 (West 2014); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

At an April 2011 VA examination, the Veteran reported symptoms including weakness, stiffness, swelling, heat, giving way, lack of endurance, locking, tenderness, drainage, pain, and dislocation. The Veteran reported he did not experience redness, fatigability, deformity, effusion, or subluxation. The Veteran reported flare-ups as often as four times per month, which lasted two days. During flare-ups, the Veteran reported functional impairment in the form of difficulty walking, running, going up stairs, and cycling. The Veteran also reported swelling and locking of the joint during flare-ups. On examination, the Veteran's posture and gait were normal. The examiner noted tenderness on both knees. Neither knee had signs of edema, instability, abnormal movement, effusion, weakness, redness, heat, deformity, guarding of movement, malalignment, drainage, or subluxation. There was no evidence of locking pain, genu recurvatum, crepitus, or ankylosis. An examination of the right and left knees found flexion from 0 to 140 degrees, and extension from 140 to 0 degrees. The Veteran was able to perform repetitive testing with no additional degree of limitation. The joint function was not additionally limited by pain, fatigue, weakness, lack of endurance, or incoordination after repetitive testing. The examiner also noted stability within normal limits, bilaterally. The examiner diagnosed right knee strain and chondromalacia, and left knee status post meniscal repair, left knee strain, and chondromalacia. The examiner opined that the knee disabilities did not affect the Veteran's usual occupation.

In June 2011, the Veteran reported to the emergency room due to increased left knee pain and swelling. On examination, the left knee showed diffuse swelling, but there was no tenderness or erythema. Extension was noted as within normal limits, but flexion was limited due to pain.

July 2011 VA medical records indicate x-rays of the Veteran's knees found minimal degenerative changes without acute fracture or subluxation in the right knee, and mild degenerative joint disease, mild medial meniscal chondrocalcinosis, and suprapatellar joint effusion in the left knee. On examination of the knees, flexion in the right knee was to 135 degrees, and flexion in the left knee was to 100 degrees. The examiner diagnosed bilateral degenerative joint disease. 
In June 2012, the Veteran reported to the emergency room after twisting his left knee. The pain was worsened by moving or weight bearing. The examiner noted limited range of motion in the left knee due to pain. There was no evidence of effusion, deformity, or laxity. Strength was noted as normal.

At an April 2014 hearing, the Veteran reported that the knee disabilities were continually worsening. The Veteran reported that sometimes while waking, the knees would give out. He also reported it was painful to walk or run. The Veteran stated he was not currently seeking treatment for the knees besides over-the-counter medications. The Veteran reported that he experienced popping and cramping in the knees after sitting for long periods of time. 

At a January 2017 VA examination, the Veteran reported pain in both knees. The Veteran reported that occasionally his knees gave out while walking. The Veteran also reported that the knees stiffened up and popped. The Veteran did not report flare-ups. An examination of the knees found flexion from 0 to 140 degrees, and extension from 140 to 0 degrees, bilaterally. There was no pain noted on examination, including with weight-bearing. There was no objective evidence of localized tenderness or pain on palpation of the knee joints or associated soft tissue. The examiner also noted no crepitus. The Veteran was able to perform repetitive use testing, and did not experience additional functional loss or limitation of motion after three repetitions. There was no pain, weakness, fatigability or incoordination after repeated use over a period of time. Muscle strength testing was normal, bilaterally. There was also no evidence of atrophy, ankylosis, subluxation, effusion, or joint instability. On passive motion testing, there was no pain noted. There was no evidence of pain when the knees were used in non-weight bearing. The examiner diagnosed degenerative joint disease, bilaterally. 

The Board finds that a rating in excess of 10 percent for limitation of motion of the knees is not warranted. While the Veteran consistently reported symptoms of pain on motion, right knee flexion was limited to 135 degrees, at worst, and left knee flexion was limited to 100 degrees, at worst. Both right and left knee extension were within normal limits during the entire appeal period. However, as the record shows painful motion with some limitation and x-ray evidence of arthritis, a 10 percent rating is warranted for both knees. 

The Board notes that the additional limitation the Veteran experiences due to pain, weakness, fatigability, lack of endurance, or incoordination on repetition was accounted for by the VA examiners when determining the Veteran's range of motion and has been considered in finding that ratings of 10 percent are warranted. 38 C.F.R. § 4.40, 4.45 (2016). The Board finds that the preponderance of the evidence is against a finding that the Veteran has more limitation of motion than that found at the VA examinations. Thus, with consideration of all pertinent disability factors, there remains no appropriate basis for assigning schedular ratings in excess of 10 percent for functional impairment of limitation of motion of the knees. 38 C.F.R. § 4.71a, Diagnostic Codes 5260, 5261 (2016).

The Board also finds that the Veteran any higher or additional rating for for knee instability. There is no indication from the record that the Veteran has knee instability that is slight or greater in nature. There were no objective findings of right or left knee instability at the April 2011 or January 2017 VA examination. While the Veteran has stated that the knees have given way, the Board finds that the findings of the examiners are more persuasive because of their training and experience. Therefore, the Board finds that an additional or higher rating based on instability is not warranted. 38 C.F.R. § 4.71a, Diagnostic Code 5257 (2016).

Consideration has been given to assigning staged ratings. However, at no time during the period in question have the disabilities warranted higher schedular ratings than those assigned. Hart v. Mansfield, 21 Vet. App. 505 (2007).

In making a decision on appeal, the Board must analyze the credibility and probative value of the evidence, account for the evidence which is found to be persuasive or unpersuasive, and provide the reasons for the rejection of any material evidence favorable to the claimant. Gabrielson v. Brown, 7 Vet. App. 36 (1994); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). The Veteran is competent to report symptoms, such as pain, because that requires only personal knowledge as it comes to him through his senses. Layno v. Brown, 6 Vet. App. 465 (1994). However, the objective evidence does not demonstrate symptoms that more nearly approximate a higher rating under the schedule of ratings for the musculoskeletal system during the appeal period. The evidence does not show ankylosis, meniscal pathology, genu recurvatum, or any other knee disability of either knee that would warrant a rating under any other Diagnostic Code.

Accordingly, the Board finds that the preponderance of the evidence is against the assignment of a rating in excess of 10 percent for a right and left knee disability, and the claims are denied. 38 U.S.C.A. § 5107 (b) (West 2014); 38 C.F.R. § 3.102 (2016). Gilbert v. Derwinski, 1 Vet. App. 49 (1990).


ORDER

Entitlement to a rating in excess of 10 percent for a right knee disability is denied.

Entitlement to a rating in excess of 10 percent for a left knee disability is denied.



____________________________________________
Harvey P. Roberts
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs